# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * | | |
| SUSIE AVCHEN, | * | |
| | * | |
| | * | No. 14-279V |
| | * | Special Master Christian J. Moran |
| Petitioner, | * | |
| | * | |
| v. | * | Filed: December 4, 2015 |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' fees and costs; hourly |
| AND HUMAN SERVICES, | * | rate, attorney travel for client visit, |
| | * | multiple attorneys |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * | | |

Ronald C. Homer, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for Petitioner;
Alexis B. Babcock, U.S. Department of Justice, Washington, D.C., for Respondent.

## PUBLISHED DECISION ON FEES AND COSTS[1]

Susie Avchen filed an application for attorneys' fees and costs. The Secretary opposed this request in part. Ms. Avchen is awarded **$29,968.13**.

## PROCEDURAL HISTORY

Ms. Avchen claimed that the influenza ("flu") vaccine caused an injection-related shoulder injury. See Petition, filed Apr. 10, 2014. The Secretary conceded that Ms. Avchen was entitled to compensation. Resp't's Rep., filed July 15, 2015.

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

Approximately six months later, the Secretary filed a proffer on award of compensation on January 20, 2015, and the undersigned issued a decision pursuant to that proffer, awarding Ms. Avchen $85,000 in damages. <u>Decision</u>, issued Jan. 22, 2015.

With the merits of Ms. Avchen's case resolved, the parties turned to the issue of attorneys' fees and costs. This case is another example of recent litigation between the law firm representing Ms. Avchen, Conway, Homer, & Chin-Caplan, P.C. ("CHCC"), and the government. The particular dispute over a reasonable hourly rate is one of relatively recent vintage.

By way of background, in 2006, the parties' counsel reached an agreement on the hourly rates for CHCC attorneys, paralegals, and law clerks based upon prevailing rates in the Boston area. <u>See</u> <u>Carr v. Sec'y of Health & Human Servs.</u>, No. 00-778V, 2006 WL10730321, at *1-4 (Fed. Cl. Spec. Mstr. Mar. 29, 2006). Two years later, the Federal Circuit changed the way special masters determined a reasonable hourly rate. The Federal Circuit determined that special masters should use the forum rate, i.e., the District of Columbia rate, in determining an award of attorneys' fees. <u>Avera v. Sec'y of Health & Human Servs.</u>, 515 F.3d 1343, 1347 (Fed. Cir. 2008). At the same time, the Federal Circuit adopted the <u>Davis County</u> exception to prevent windfalls to attorneys who work in less expensive legal markets. <u>Id.</u> (citing <u>Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency</u>, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Initially, Ms. Avchen filed an application for attorneys' fees and costs, requesting $18,627.10 in attorneys' fees, $1,452.64 in attorneys' costs, and $402.45 in petitioner's costs for a total of $20,482.19. Ms. Avchen requested compensation at <u>Carr</u> rates. For example, the attorney primarily responsible for Ms. Avchen's case, Mr. Pepper, charged $213 per hour. <u>See</u> Pet'r's Mot., filed May 21, 2015, Tab A at pdf 17, 19. The Secretary filed an opposition to Ms. Avchen's fee application on June 8, 2015, objecting on the grounds that the attorneys' hourly rates were not reasonable, portions of the time expended were excessive and/or unreasonable, and Mr. Homer's site visit was unreasonable.

On June 22, 2015, Ms. Avchen filed a reply to the Secretary's opposition, arguing that none of the fees or costs requested was excessive. Ms. Avchen also filed an amended application for attorneys' fees and costs, requesting $28,162.10 in attorneys' fees due to additional fees for fee application work, for a total of $30,017.19 for all fees and costs. In this request, the attorneys charged higher rates for work performed after June 9, 2015. For example, Mr. Pepper charged $295 per

hour. Pet'r's Am. Mot., filed June 22, 2015, at pdf 17. On July 9, 2015, the Secretary filed an opposition to Ms. Avchen's amended application for attorneys' fees. The Secretary objected to the proposed hourly rates as well as the number of hours spent. On July 23, 2015, Ms. Avchen filed a sur-reply, arguing that the attorneys' fees and costs, as well as the hourly rates, are reasonable.

On October 21, 2015, the undersigned determined that the analysis in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), was sound. Although McCulloch is not binding, the undersigned intended to follow McCulloch for its finding on the reasonable hourly rates. On October 22, 2015, the undersigned ordered the parties to complete a chart outlining the requested number of hours for each attorney, paralegal, and law clerk that completed work on the case.

On November 6, 2015, Ms. Avchen submitted the completed chart and an amended motion for attorney fees and costs reflecting the McCulloch rate. The amended application requested $33,190.00 in attorneys' fees, $1,452.64 in attorneys' costs, and $402.45 in petitioner's costs for a total of $35,045.09. In this request, all work is charged at the McCulloch rate. For example, Mr. Pepper charged $290 per hour for activities performed before June 9, 2015. Pet's Second Am. Mot., filed Nov. 6, 2015, at pdf 17. On November 20, 2015, the Secretary filed a response to the October 22, 2015 order, continuing her previous objections.

This matter is now ripe for adjudication.

## DISCUSSION

### I. Entitlement to Fees and Costs Under the Vaccine Act

Under the Vaccine Act, a special master or a judge of the United States Court of Federal Claims shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013). Ms. Avchen was awarded compensation, and therefore Ms. Avchen is entitled to an award of reasonable attorneys' fees and costs in this case.

### II. Reasonableness of Requested Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act, which involves a two-

step process.  Avera, 515 F.3d at 1348.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.  See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008).  Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id.  Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.  See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009).  A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### A.   Reasonable Hourly Rates

An appropriate hourly rate for the attorneys, paralegals, and law clerks at CHCC was found in McCulloch, 2015 WL 5634323.  The McCulloch analysis regarding appropriate hourly rates for the attorneys, paralegals, and law clerks at CHCC is sound.  For the attorneys involved, the hourly rates are as follows:

| Attorney | Rate |
|---|---|
| Kevin Conway | $415 |
| Ronald Homer | $400 |
| Christine Ciampolillo | $300 |
| Amy Schwader (née Fashano) | $285 |
| Joseph Pepper | $290 |
| Meredith Daniels | $280 |

For the law clerks and paralegals involved in the instant case, the hourly rates are as follows:

Law Clerks                        $145
Paralegals                        $135

Id., at *28.

### B.    Reasonable Number of Hours

After a reasonable hourly rate is determined, the next step is to determine a reasonable number of hours.  The Secretary has three principal objections: the time and costs associated with an attorney's visit to a client's home, the number of hours billed by Mr. Homer, and the participation of additional attorneys.

#### 1.    Home Visit

Mr. Pepper and a paralegal began preparations for the attorney visit on July 30, 2014.  In anticipation of the meeting with Ms. Avchen, Mr. Homer reviewed memoranda and case materials.  On August 13, 2014, Mr. Homer traveled from his office in Massachusetts to Ms. Avchen's home in California.  He met with Ms. Avchen for approximately two hours.  Ms. Avchen requests $6,208.96 in attorneys' fees and costs ($5,560.00 in attorneys' fees and $648.96 in costs) for this trip.  Pet'r's Second Am. Mot., filed Nov. 6, 2015, at pdf 12, 18.[2]

The Secretary objects to the attorneys' fees and costs associated with Mr. Homer's visit.  The Secretary contends that the visit was unnecessary because the case involves a "straightforward SIRVA injury" which required neither future medical expenses nor a life care plan.  Resp't's Opp. at 19.

Ms. Avchen contends that the visit was necessary to maintain the attorney-client relationship.  Pet'r's Reply at 55.  Additionally, Ms. Avchen states that an in-person meeting gives the firm "the opportunity to… put … complex causation and damages issues in context."  Pet'r's Sur-reply at 9.

Although not entirely clear, it appears that the Secretary's objection encompasses all aspects of Mr. Homer's meeting with Ms. Avchen (the preparation for the meeting, the travel to the meeting, and the meeting itself).  Compare Pet'r's Second Am. Mot., filed Nov. 6, 2015, at pdf 12, 18 (listing the activities associated with this trip) with Resp't's Opp. at 19 (objecting to 14.4 hours charged by Mr.

---

[2] The attorneys' time sheet indicates that the costs were split among three cases.  However, most the billing information identifies only one other case while one receipt mentions three.  Pet'r's Second Am. Mot., filed Nov. 6, 2015, at pdf 37, 42-43, 45-46.

Homer).  To the extent that the Secretary has lodged an objection to Mr. Homer meeting with Ms. Avchen, that objection is misplaced.  At this stage of the case, the parties were attempting to determine the amount of compensation to which Ms. Avchen was entitled.  It is reasonable for an attorney to spend some time (here, approximately two hours) educating the client about the scope of compensation provided in the Vaccine Act.  Therefore, Mr. Homer's activities of preparing for and participating in a meeting with Ms. Avchen are both reasonable and compensable.[3]

    The closer question is whether Mr. Homer's travel to the meeting was reasonable.  To determine whether the Vaccine Injury Compensation Trust Fund should compensate an attorneys' fee request, the special master must determine whether the activities pertaining to the fee request are "reasonable."  42 U.S.C. § 300aa–15(e).  The United States Court of Appeals for the Federal Circuit has clarified that "in the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  Saxton, 3 F.3d at 1521 (emphasis in original), quoting Hensley, 461 U.S. at 433–34.  Therefore, a test to determine whether an attorney's activities are reasonable is to ask whether a hypothetical client would be willing to pay for such activities.  Riggins v. Sec'y of Dep't of Health & Human Servs., No. 99-382V, 2009 WL 3319818, at *12 (Fed. Cl. Spec. Mstr. June 15, 2009), mot. for rev. denied (Fed. Cl. Dec. 10, 2009), aff'd, 406 Fed. Appx. 479 (Fed. Cir. 2011); Sabella, 86 Fed. Cl. at 201.

    Whether it is reasonable for an attorney to expend money from the Vaccine Injury Compensation Trust Fund to travel depends on many factors.  There is not a bright line answer either always endorsing attorney travel or always opposing attorney travel.  Relevant factors include the health of the petitioner, the petitioner's ability to travel to meet with the attorney, the distance between the attorney and client, the need for an in-person communication, and the cost associated with the travel.  Another important factor is that technology easily allows for face-to-face conversations to be held remotely.  Ordinarily, a paying client would probably prefer the attorney to use less expensive means of communication, such as e-mail, telephone, and teleconference, before undertaking a more expensive trip.  But, the availability of this technology does not mean that

---

[3] Mr. Homer's work is not duplicative with Mr. Pepper's activities as it involves legitimate delegation of work to an associate who charges less per hour.

attorneys can never travel to meet with their clients. The travel must be reasonable under all the circumstances, including alternatives to the trip.

In this case, the law firm has failed to present a persuasive justification for Mr. Homer's cross-country trip. Ms. Avchen suffered a shoulder injury related to vaccine administration ("SIRVA"). SIRVA cases are relatively common and CHCC has successfully resolved many SIRVA cases. Importantly, CHCC has not routinely travelled to client's homes in its other recent SIRVA cases. It is also significant that CHCC did not employ a life care planner. If the participation of a life care planner was not needed, why did an attorney have to go to Ms. Avchen's home? A secondary question is that even if an attorney did need to go, why not send Mr. Pepper?

The law firm's answer contains no information specific to Ms. Avchen's case. Instead, the law firm argues that the attorney-client relationship is enhanced by an in-person meeting. See Pet'r's Reply, filed June 22, 2015, at 55-58. However, an attorney may competently represent a client without meeting the client in person. Ms. Avchen retained CHCC in April 2013. Her case was able to progress through phone calls, emails, and phone conferences with paralegals and Mr. Pepper for more than a year before Mr. Homer traveled to meet with her in-person in August 2014. See generally Pet'r's Second Am. Mot., filed Nov. 6, 2015, at pdf 4-12. Additionally, numerous cases in the Vaccine Program are successfully litigated without attorneys traveling to meet clients. This experience informs the undersigned that in-person meetings are not essential to the attorney-client relationship. Cf. Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1520 (Fed. Cir. 1993) (special masters may rely upon their experience in determining the reasonableness of attorneys' fees and costs).

The law firm has failed to provide a persuasive explanation that a hypothetical paying client would accept as a reason to incur the fees and expenses associated with a lengthy trip for a meeting that lasted approximately two hours. Therefore, **the undersigned reduces the attorneys' fees by $4,160.00 and the attorneys' costs by $648.96.** These are the fees and costs associated with the travel to the meeting, not the fees associated with the meeting itself.

### 2. Reasonable Number of Hours Billed by Mr. Homer

The attorney who primarily worked on this case was Mr. Pepper. Mr. Pepper, however, was not listed as counsel of record. Mr. Homer was.

Mr. Homer billed time to review every electronic filing notification and to note each filing in the firm's case file. Specifically, he billed 0.1 hour to review nearly every filing. In total, Mr. Homer billed 2.4 hours.

The Secretary objects to time billed by Mr. Homer. Resp't's Opp. at 18. In particular, the Secretary objects to Mr. Homer's time spent reviewing orders and other filings in the case. Id. The Secretary notes that the majority of Mr. Homer's time was spent taking notice of orders and calendaring, which, she argues, is redundant because the attorneys substantively litigating the case would also need to be knowledgeable of the docket and deadlines. Id. at 18-19.

Ms. Avchen submits that Mr. Homer's time spent calendaring this case was necessary. Ms. Avchen describes Mr. Homer's role in the cases at CHCC, explaining that it is essential for Mr. Homer to review all court orders and set tasks and track deadlines for each attorney, as he is the attorney of record in all CHCC cases. Id. at 54.

Would a client pay for Mr. Homer (and not Mr. Pepper) to review orders? Mr. Pepper competently manages his docket of cases. While it is essential that a case remain organized, Mr. Homer does not use his insight and judgment when reviewing orders simply to track deadlines and assign tasks. It is not necessary for an established attorney to bill those tasks at a high rate. Therefore, the undersigned finds that a hypothetical client would not be willing to pay for Mr. Homer's taking notice of orders and calendaring at his higher hourly rate.

The undersigned reduces the amount billed by Mr. Homer for reviewing court orders and respondent's filings by the percentage difference, rounded down, between his billing rate and the most experienced attorney that was closely involved in the case, Mr. Pepper (28%), as it would have been reasonable for Mr. Pepper to review these filings. However, the undersigned will not reduce the amount petitioner requested for Mr. Homer's work that was not simple review of orders or duplicative. **Therefore, the undersigned reduces the attorneys' fees by $268**.

### 3. Staffing by Additional Attorneys

The primary attorney on this case is Mr. Pepper and the Secretary did not object to time he spent on the case. At times, Mr. Pepper had assistance from other attorneys, including Meredith Daniels, Amy Fashano, and Christine Ciampolillo. The Secretary objects to time billed by Ms. Daniels (1.5 hours), Ms. Fashano (0.5

hours), and Ms. Ciampolillo (0.6 hours). Resp't's Opp. at 18. The Secretary argues that the firm's consistent practice of using multiple attorneys on every case is unreasonable and unnecessary, especially for this uncomplicated case. Id.

Ms. Avchen contends that the time additional attorneys spent on the case was necessary, reasonable, and not duplicative. Ms. Avchen argues that, in order to zealously and effectively represent clients, it is necessary for the attorneys to discuss the "facts, medical theory and legal ramifications of each case in detail." Reply at 52. Ms. Avchen also defends the time additional attorneys spent reviewing and editing pleadings. Id. at 53. Ms. Avchen states, "[i]t would be unprofessional and, potentially, negligent for petitioner's counsel to not review filings." Id.

The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on one case. CHCC often employs such a business model, but special masters have also reduced fees for other attorneys and firms. See Sabella, 86 Fed. Cl. at 214–15 (finding not arbitrary the special master's reduction of fees for overstaffing where three attorneys from two different firms worked on a case together); Austin v. Sec'y of Health & Human Servs., No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. January 31, 2013) (deducting $500 for excessive interoffice communication in a case where seven attorneys at CHCC billed for attending conferences and drafting memoranda about the case); Soto v. Sec'y of Health and Human Servs., No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (reducing CHCC's fees for intra-office communications and meetings); Carcamo v. Sec'y of Health and Human Servs., No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (reducing fees when two attorneys billed for the same meetings with a client).

Ms. Daniels, Ms. Fashano, and Ms. Ciampolillo primarily edited documents that Mr. Pepper had drafted. If the document communicated important information such as the petition, then a review by another attorney was reasonable. However, these attorneys also reviewed relatively routine documents such as a status reports and motions for enlargement of time. See entries for Aug. 29, 2014, Nov. 24, 2014, Jan. 16, 2015, Jan. 23, 2015, Jan. 26, 2015, June 15, 2015, July 15, 2015, July 16, 2015, and Nov. 5, 2015. These tasks duplicate work that Mr. Pepper performed. **They total $384. This amount is reduced from petitioner's request.**

## CONCLUSION

The undersigned finds an award of attorneys' fees and costs appropriate. In sum, the undersigned awards Ms. Avchen the following amount for attorneys' fees and costs:

Summary

| | |
|---|---:|
| Requested Attorneys' Fees (at the <u>McCulloch</u> Rate): | $33,190.00 |
| Reductions: | $4,428.00 |
| **Attorneys' Fees Awarded:** | **$28,762.00** |
| | |
| Requested Attorneys' Costs: | $1,452.64 |
| Reductions: | $648.96 |
| **Attorneys' Costs Awarded:** | **$803.68** |
| | |
| Requested Petitioner's Costs: | $402.45 |
| Reductions: | $0.00 |
| **Petitioner's Costs Awarded:** | **$402.45** |
| | |
| Attorneys' Fees & Costs Awarded: | **29,565.68** |
| Petitioner's Costs Awarded: | **$402.45** |
| Total Attorneys' Fees & Costs Awarded: | **29,968.13** |

**Accordingly, the court awards:**

a. **$29,565.68** representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and petitioner's attorney, Ronald Homer of Conway, Homer & Chin-Caplan, in the amount of **$29,565.68**; and

b. **$402.45**, representing Ms. Avchen's costs. The award shall be in the form of a check made payable to Ms. Avchen for **$402.45**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

s/ Christian J. Moran
Christian J. Moran
Special Master
